**IN THE COURT OF APPEALS OF IOWA**

No. 15-0119
Filed March 9, 2016

**LADAWN R. SEWARD,**
        Plaintiff-Appellee,

**vs.**

**TROY P. HANE,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Monona County, Jeffrey A. Neary,

Judge.


A father appeals a decree placing physical care of his children with their

mother and establishing provisions relating to visitation, child support, and post-

secondary education support. **AFFIRMED AS MODIFIED AND REMANDED.**



Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for

appellant.

Jacquelyn S. Johnson of Vonnahme Law, P.C., Sioux City, for appellee.


Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

Troy Hane appeals a district court decree placing physical care of his children with their mother, LaDawn Seward. He also challenges the visitation, child support, and post-secondary education subsidy provisions.

**I.      *Background Facts and Proceedings***

Hane and Seward are the unmarried parents of two children, born in 2002 and 2006. The parents separated after a fifteen-year relationship. The children stayed with their mother, subject to informal and irregular visitation with their father.

Although Seward was employed, she received State medical assistance. The receipt of this assistance precipitated a State-initiated order requiring Hane to pay $152 per month in child support, with the support assigned to the State. *See* Iowa Code § 252C.2(1) (2015) ("If public assistance is provided by the department to or on behalf of a dependent child or a dependent child's caretaker, there is an assignment by operation of law to the department of any and all right in, title to, and interest in any support obligation . . . .").

After the order was entered, Seward filed a petition to establish paternity, care, custody, and visitation. The district court entered a temporary order granting Seward physical care of the children, awarding Hane visitation every other weekend and one overnight every week, and confirming the chapter 252C child support order.

Following trial, the district court granted Seward permanent physical care of the children, awarded Hane visitation every other weekend and "each Wednesday from 4:00 p.m. until 8:00 p.m.," ordered Hane to pay child support of

$734.37 per month after imputing income to him of $30,000 annually, and "reserved the issue of Post-secondary Education Support until such time as it is ripe for consideration."

Hane moved for enlarged findings and conclusions. The district court twice amended the mid-week visitation portion of the decree, with the final ruling granting Hane overnight weekly visitation from "Wednesday at 4:00 p.m. [to] conclude Thursday at 8:30 a.m. unless the parties otherwise agree." Hane appealed.

## II.     Analysis

### A.     Physical Care/Joint Physical Care

Hane contends the district court acted inequitably in granting Seward physical care of the children. In his view, she was not the historical caregiver. He argues the district court should have awarded joint physical care or, alternatively, placed physical care of the children with him, given Seward's "recalcitrance toward" him.

Our analysis of who should have physical care is the same whether the parents are married or unmarried. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). We apply the factors set forth in our chapter on dissolutions of marriage. *Id.*; *see also* Iowa Code §§ 600B.40, 598.41(3). With respect to a joint physical care determination, the Iowa Supreme Court has articulated several pertinent factors, including whether "both parents have historically contributed to physical care in roughly the same proportion," the "ability of spouses to communicate and show mutual respect," and "the degree of conflict between parents." *In re Marriage of Hansen*, 733 N.W.2d 683, 697-98 (Iowa 2007). We will address the

district court's physical care and joint physical care determinations together, reviewing the record de novo.

We begin with the parents' historical caregiving roles. *Id.*; *see also* Iowa Code § 598.41(3)(d) ("Whether both parents have actively cared for the child before and since the separation."). Seward testified she was the primary caretaker of the children throughout the relationship. She stated Hane was not around much and "was mostly occupied with running his own business and hunting." On our de novo review, we believe Seward overstated Hane's lack of involvement with the children while the couple was together.

During that period, Hane regularly got the children ready in the mornings, transported them to school or daycare, attended their medical appointments, and spent time with the children in the afternoons, at his work location. Seward took credit for facilitating the afternoon visits, stating this was "about the only time [Hane] would be able to see them until he got off work, which was always late." Regardless, Hane willingly engaged with the children for several hours a day prior to the separation.

Hane's involvement waned following the couple's separation. *See* Iowa Code § 598.41(3)(d) (focusing on care "before *and since the separation*" (emphasis added)). Hane attributed the decline in visits to Seward's obstructiveness, characterizing her as "very spiteful" in the wake of their split. But he did not press for more time with the children in the year preceding entry of the temporary order. He also acknowledged his failure to attend many if not most of the children's extracurricular activities, notwithstanding his flexible

schedule.[1]  And Hane stopped attending the children's medical appointments. Finally, Hane failed to provide regular financial assistance in the year preceding the court's entry of the chapter 252C support order.

After the district court imposed a temporary visitation schedule, Hane engaged in visits but continued to take little interest in the children's extracurricular activities.  He made time for hunting in the evenings but little else.

Notably, Hane lived in the same small town as Seward, making active participation in the children's lives logistically feasible.  *See id.* § 598.41(3)(h) (citing "[t]he geographic proximity of the parents").  Indeed, had he been more involved, the parents' proximity would have militated in favor of joint physical care.  So too would have the parents' ability to communicate effectively on important matters, such as joint attendance at parent-teacher conferences and completion of homework.  *See Hansen*, 733 N.W.2d at 698.  But Hane's failure to actively parent the children following his separation from Seward supported the district court's decision to grant Seward physical care of the children.  *See id.* at 697-98 (citing the children's needs for stability and continuity of caregiving).  For the same reason, the district court acted equitably in denying Hane's request for physical care of the children.

In reaching this conclusion, we have considered Hane's assertion that Seward sometimes left the children home alone.  According to Seward, the children were only by themselves for ten minutes on school days and for two-and-a-half hours at a time on certain summer days.  She noted her older child

---

[1] Hane testified, "I can alter my hours.  I can work from 9:00 at night until 5:00 in the morning, if I'm busy with the kids."

was old enough to care for himself and the younger child, their grandmother was available to check on them during the summer months, as were neighbors, and she worked just a few blocks away from her home. Under these circumstances, we conclude the lack of constant adult supervision did not warrant modification of the physical care determination.

### B. Visitation

Liberal visitation generally is in a child's best interests. Iowa Code § 598.41(1)(a). Hane contends the mid-week overnight visitation ordered by the court should have been extended to 5:00 p.m.

At best, Hane's proposal would have afforded him an additional hour of time with the children after school. Given their extracurricular activities, we question how often he could have exercised this extra hour. We conclude the district court acted equitably in amending the decree to end the mid-week overnight visit at 8:30 a.m. and by declining to extend the overnight visit to 5:00 p.m.

### C. Child Support

Hane contends the district court impermissibly modified the child support obligation established in the chapter 252C order. He notes (1) the State of Iowa "was also a party to the support order . . . and was not notified of this action"; (2) Seward "did not request a modification of the existing child support order"; and (3) there was "no change of circumstances to warrant a modification of child support since the original child support order was entered." We find the first argument dispositive.

Iowa Code section 598.21C(3) states in pertinent part:

> [A] modification of a support order entered under chapter . . . 252C, . . . or any other support chapter or proceeding between parties to the order is *void* unless the modification is approved by the court, after proper notice and opportunity to be heard is given *to all parties* to the order, and entered as an order of the court. If support payments have been assigned to the department of human services pursuant to section 234.39, 239B.6, or 252E.11, or if services are being provided pursuant to chapter 252B, *the department is a party to the support order*.

(Emphasis added.) Under this provision, the State would be a "party" entitled to notice if the support payments were assigned to the department pursuant to the enumerated provisions. *See id.* § 598.21C(3). One of the provisions—section 252E.11—is applicable here. It states, "If medical assistance is provided by the department to a dependent pursuant to chapter 249A, rights to medical support payments are assigned to the department." *Id.* § 252E.11; *see also id.* § 252C.2(1) ("If public assistance is provided by the department to or on behalf of a dependent child or a dependent child's caretaker, there is an assignment by operation of law to the department of any and all right in, title to, and interest in any support obligation . . . ."). Seward testified the children received State medical assistance. Accordingly, the State was entitled to any support ordered while they received this assistance. *Id.* §§ 252E.11, 252C.2(1).

Because the State was assigned the right to child support, the State was entitled to notice and an opportunity to be heard in any proceeding modifying its support order. *See State ex. rel. Phipps v. Phipps*, 503 N.W.2d 391, 393 n.1 (Iowa 1993) ("The State (DHS) is considered a party to a support order in a modification of support proceeding if the support payments have been assigned to DHS.").

The question becomes whether the paternity action filed by Seward could be construed as an action to modify the prior chapter 252C child support order. Although the court did not couch its child support order as a modification of the prior order, the order effectively did just that. Seward's child support obligation was increased from $152 per month to $734.37 per month. This was a modification, and the State, as assignee, was entitled to notice and an opportunity to be heard. Because the State was not afforded this notice, the child support provision in the paternity decree was "void" and must be vacated. *See* Iowa Code § 598.21C(3); *see also Phipps*, 503 N.W.2d at 392-93 ("The State is a party in a chapter 252A action and is entitled to notice. A modification order under chapter 598 has no legal effect on a chapter 252A support obligation if notice is not given to DHS." (Footnote and citation omitted)); *State ex. rel. Dep't of Human Servs. v. Micou*, 500 N.W.2d 89, 92 (Iowa Ct. App. 1993) (concluding a child support order "had no legal effect" on prior administrative support order because department was not given notice).

Our conclusion means that the chapter 252C order remains in effect pending a modification ruling in the paternity action following notice to the State and an opportunity to be heard. *See Phipps*, 503 N.W.2d at 392-93 ("The State is entitled to recover in its own right without regard to the terms of support orders affecting the rights and obligations of the parents."); *see also Opat v. Ludeking*, 666 N.W.2d 597, 607 (Iowa 2003) ("Normally a judgment entered against a party without notice is void, as the court has no personal jurisdiction over the defendant."); *Micou*, 500 N.W.2d at 91 ("[I]f DHS is not given notice of a subsequent child support order which is entered in a dissolution action . . . , the

relief available under chapter 252A will be unaffected."); *State ex rel. Dep't of Human Servs. v. Uebler*, 417 N.W.2d 224, 225 (Iowa Ct. App. 1987) ("[T]he relief available under chapter 252A is an independent, additional or alternative civil remedy . . . .").

In reaching this conclusion, we have considered Seward's argument that Hane lacks standing to assert the absence of notice to the department.  But if not Hane, who would challenge the order?  The department could not because it was unaware of the proceeding.  And Seward would not because the increase in support was in her best interests.  Hane's challenge was appropriate.  We modify the decree to delete the child support obligation and remand for further proceedings following notice to the State and an opportunity to be heard.

In light of our conclusion, we find it unnecessary to address Hane's remaining challenges to the child support order.

### *D.      Post-secondary Education Support*

Hane argues the district court should not have reserved ruling on whether he was obligated to provide post-secondary education support for his children. We agree.

The statutory obligation to provide post-secondary education is contained in our divorce statute.  Iowa Code §§ 598.1(8), 598.21F.  This support obligation applies only to individuals who were once married.  *See Johnson v. Louis*, 654 N.W.2d 886, 890-91 (Iowa 2002) (rejecting an equal protection challenge to this limitation); *see also Axline v. Wylie*, No. 13-1120, 2014 WL 3747684, at *4 (Iowa Ct. App. July 30, 2014) ("Because there is no common law or statutory right to such a subsidy for children born to unmarried parents, we modify the order to

eliminate the postsecondary education subsidy." (Citation omitted)); *State ex rel. Wilson v. Beckner*, No. 08-1403, 2009 WL 1886054, at *1-2 (Iowa Ct. App. July 2, 2009) (noting the parents' stipulation afforded the parent the right to petition for postsecondary education support). Seward and Hane were never married. Accordingly, we modify the decree to delete the post-secondary education provision.

### III.    *Appellate Attorney Fees*

Both parties request appellate attorney's fees. Iowa Code section 600B.26 allows a court to award "reasonable" attorney's fees to the "prevailing party." Although Hane prevailed on two issues, Seward's annual income was under $30,000, and, unlike Hane, she did not receive financial support from her mother. For these reasons, we decline to order her to pay anything towards Hane's appellate attorney fee obligation.

### IV.    *Disposition*

We modify the decree to delete the child support provision and remand for further proceedings on child support following notice to the State and an opportunity to be heard. We delete the reservation-of-ruling provision on post-secondary education support.

**AFFIRMED AS MODIFIED AND REMANDED.**